Case 20-5460, 25462, 25463, 25469, and 25637, USA ex rel Kathleen Bryant et al. v. Community Health Systems Inc. et al. 30 minutes to be shared by plaintiffs, 30 minutes for the defendants. And, Mr. Garrison, you may proceed. Good morning, Your Honors. David Garrison on behalf of the relators in these various cases. I've asked for 10 minutes to argue. My colleague, Pat O'Connell, is going to make arguments that are more specific to the Cook-Hreska and the cases. I also want to introduce Mitch Kreindler and Sharon Gurak, who are here and represent Kathleen Bryant. Again, I'm here to speak on some general arguments that apply to all the relators in these various cases. In 2014, the United States Department of Justice announced nearly a $100 million settlement with various defendants that make up what is called community health systems. That settlement agreement resolved seven key TAM lawsuits that were pending in different district courts around the country, including one district court in this circuit, in the Middle District of Tennessee. That's where the Dog-Ramsey case was filed. The settlement agreement resolving this litigation, to which CHS and all the relators are parties, provided that relators' claims for recovering of their attorney's pursuant to 31 U.S.C. 3730D were not waived. In other words, it preserved relators' rights to file a fee petition for recovery of their reasonable fees and expenses, the fee-shifting provision provided by the statute. Following the execution of the settlement agreement, the government proceeded with all the lawsuits that were covered by the agreement. It proceeded with those lawsuits as contemplated by 3730D and pursuant to specific terms in the agreement. The various courts dismissed the relators' claims pursuant to the terms of the relators' – excuse me, of the settlement agreements, and relators all filed their fee petitions in accordance with the local rules of the various courts. So, who signed these settlement agreements? Was it each relator and the government and the defendant, or who are the signers? Those who executed the agreement include CHS, the government, and all relators. It's one settlement agreement. And so, after that settlement agreement was entered, the various cases were dismissed, the fee petitions were filed. That was in 2014. We've spent the last seven years litigating issues raised by CHS that have nothing to do with the reasonableness of relators' fees and have to do with whether relators were proper relators that could have brought a case under the False Claims Act at all. We submit that those issues have nothing to do with 3730D, and that's why this Court should remand this action for determination of the reasonable fees. This case has been up here before this Court before, a few years ago, on contract interpretation. I think it's important to understand why in the context of that. We were here at that point because the district court judge, after all these cases had been consolidated into the Middle District of Tennessee, the district court judge ruled that as a matter of the settlement agreements, the contract principles of the settlement agreement, relators could move for their fees, period. That decision was appealed by CHS. This Court decided that the district court should have looked at extrinsic evidence, and we were remanded to the Court where there was a trial held where various lawyers that negotiated the settlement agreement testified. Ultimately, Judge Aspen, who sits in the Northern District of Illinois but who is specially assigned to this case, decided that the contract did not apply and has instead issued a ruling on statutory interpretation. So we're not here on contract interpretation. We're here on statutory interpretation. And before I get to that argument, though, I do think it's important to recognize that the situation at hand here, and Judge Stranch in her concurrence during the last appeal of this case, summed it up, I think, quite well. And I think it's important to understand the context of what brings about fee petitions like are being dealt with in these various cases. Judge Stranch wrote, this is after a whistleblower comes forward to the government to expose fraud. Judge Stranch wrote, attorneys then must undertake the substantial investigative work in expense of putting together a case for their relators, then present it to the government officials to determine if the government is willing to proceed with the litigation. Counsel routinely undertake this work without knowing whether other key TAM complaints have been filed under seal elsewhere. If the government decides that the information provided would be useful to it in vindicating society's rights, it may share information about other key TAM cases and create a group of counsel to do the work that is necessary to prosecute the case. This work often takes years during which the government runs the sealed case, including assigning tasks to various counsel and approaching the defendant about the claims and monetary settlement. So is your position that this is a statutory interpretation case or that this is a contract, i.e. the settlement interpretation case? What is your view as to what is in front of us? Sure. It's a contract, excuse me, it's a statutory interpretation case. And this court should employ a strict analysis of what 3730D says and provides. So what exactly do you think 3730D provides? So 3730D sets forth right from the beginning that it applies to cases that are brought by relators under subsection B of the Act. And it's cases where the government has proceeded with those cases. Now why does the statute identify cases that are brought under B? Well, because subsection A has to do with False Claims Act cases that are brought by the government. This case was brought by a whistleblower and it was proceeded with by the government. And that's a key fact because this statute works just like any other federal fee-shifting statute that has to do with whether a relator or a plaintiff, in most cases, prevails. Then why, if that's your position, if we're looking at 3730D and you're taking us to 3730B, B-5 has the first-to-file requirement. So why does that not apply? Well, Your Honor, I'm not taking you to B. CHS would say to you, well, Your Honors, now you have to shift to B and analyze all that. Subsection D simply identifies which type of case applies to the scenario that's set forth in B. Excuse me, in D, as in David. This scenario is in D as in David, the fee-shifting provision. The first two sentences contemplate the relator who has brought the case where the government has secured proceeds. There are some percentages of those proceeds that are to be paid to the relators that have brought such a case that the government proceeded with. In this case, as Judge Aspin found, all relators shared in those proceeds. The statute goes on to say that those proceeds shall be paid by the government, and then the statute goes on to read that any such person shall also receive an amount for reasonable expenses for which the court finds to have been necessarily incurred, plus reasonable attorney's fees and costs. All such expenses, fees, and costs shall be awarded by the defendant. So in other words, D sets forth a mechanism that if you're a whistleblower who has brought a case that the government has proceeded with then and secured proceeds, then you're entitled to a share of those proceeds from the government, and you are also entitled to receive your reasonable attorney's fees and costs from the defendant. And that attorney's fees award is in addition to the share of the proceeds, correct? Correct. And I think that's clear because, again, the proceeds are coming from the government's recovery and that's either would be decided by a court or, in this case, agreed upon with the government within those percentages, and then the attorney's fees and costs are to be paid by the defendant, which is clear. Could the settlement that was agreed to have provided explicitly that the limits, such as first to file rule and public disclosure, would apply to any award of attorney's fees? I suppose it could, but it did not. And, of course, if the parties had agreed to litigate issues outside of subsection D, well, then that would need to be set forth in the agreement because what was reserved are relator's claims under D. And those claims would be the reasonableness of the request for attorney's fees, is that right? That's right. It also would have been the relator's share, except that the government and the relators entered into a separate agreement for that percentage. Did each relator actually receive part of the proceeds? Yes, and Judge Aspen found that. And I think what's key here, and I think the starting point in this analysis and the opinion rendered by this court, should be that the significance of the government proceeding with these actions. The government can choose not to proceed with the actions, of course. The government chooses all the time to decide to move to dismiss a relator's claim or to say, these cases have nothing to do with what we are seeking to recover at all. In this case, it's significant, and it should always be significant, when the government decides to proceed with an action. Suppose one of the relators received a small share of the proceeds, but that relator is claiming a large amount of attorney's fees. Would that be allowable under your interpretation of the case? Well, that would be allowable. It would also be decided from the district court, and ultimately maybe on appeal, if those are reasonable attorney's fees to be seeking. One thing I don't want to be lost on this court is every relator in these cases understands that the fees have to be approved by the court under a reasonableness standard. This court has said to use a Lodestar standard. There's, of course, as this court's well aware, all kinds of issues that could be litigated with respect to fee petitions, including what rates to approve, including whether there was duplicative or unnecessary work. We concede that that is what is allowed to be decided in any fee petition, and certainly in these as well. I do note that my timer started at 15 minutes, and I intended to just have 10 minutes and allow Mr. O'Connell to have 10 minutes, so if there's any other questions, I'm happy to answer those, but otherwise, I'll come back on rebuttal. Thank you.  Good morning, Your Honor. Of the seven relators that originally filed in this case, I represent the first two filers in time. Nancy Rowell filed against Lutheran Hospital in Fort Wayne, Indiana, and Ms. Cook-Reska, the second in time filer, filed against the corporate parent, CHS, and its subsidiary, Laredo Medical Center. I concur with Mr. Garrison's arguments, but there's some specific arguments related to these first two filers that I feel like I need to make. They're in a completely different position than the other relators. The district court, even if it had the right to determine whether a relator was first to file or survived Rule 9b, failed to follow this court's instructions in U.S. ex-rel Poteet versus Medtronic and U.S. ex-rel Walburn versus Lockheed Martin. Each of those require that if the court has to make a first to file determination, you start from the first filer, and then you look to see if the later cases were related to the first filer. The district court did the reverse of what this court requires in Poteet. It declared that the third filer, Dr. Plants, was the first filer, and then looked backwards to Ms. Rowell and Ms. Cook-Reska and determined that their complaints failed on 9b. So I think the first question that you have to answer is whether the district court even has the right to determine whether a complaint's 9b status is alive if the government's already determined that. And as Mr. Garrison said, the government already decided Ms. Rowell was first to file as to Laredo and CHS, and then Dr. Plants was first to file as to the remainder of the causes of action against the other 139 subsidiaries. Our research shows I can't find a single case in the United States where the U.S. recovered from a defendant, well, first of all, the U.S. intervened in the case, recovered from the defendant after settlement, the U.S. determined that a relator was first to file on a particular cause of action, the U.S. paid that relator a relator share, but yet the court rejected the government's determination and determined that a later file case was first to file. Nothing in the FCA grants the district court the right to do that. In the Roberts v. Accenture case in the 8th Circuit, that circuit looked at a very similar situation. In that case, the case was settled and the government brought a 9B action against the relator saying we don't have to pay your relator share. The 8th Circuit said, quote, nothing in the FCA's statutory text supports this type of post hoc use of Rule 9B to deny a relator the right to a share of the settlement proceeds in an action in which the government intervenes. The 1st, 4th, 5th, and 10th Circuit have also similarly found that 9B is not available to a defendant on appeal. It's supposed to be done before trial. So the same rule should apply here. If the government doesn't have a right to take away the relator's relator share, the defendant should not have a right to take away the relator's right to fees. Now, if we were to accept your colleague's view of the case, we wouldn't need to get to this issue. Is that correct? That's correct, Your Honor. That's absolutely correct. Now, if the district court has a right to make that decision, then if you find that, my client should still recover their fees. And what the district court did, and let me read the pertinent part of the settlement agreement to you. CHS knowingly submitted or caused to be submitted claims for payment to government health care programs for certain inpatient admissions of government beneficiaries that were medically unnecessary and should have been billed as outpatient or observation services. That's the core of this case. Somebody walks in the door at the hospital, and you know, Your Honor, I think it's pretty safe to say we would all agree that there's only two ways you go into the hospital. Either your doctor sends you to the hospital for a surgery or some treatment, or you go through the emergency room. In this case, Ms. Ruelle alleged in her complaint that there had been a dramatic decrease in the volume of 23-hour observation cases and a dramatic increase in the number of inpatient one-day hospitalizations under the new owner, CHS, for Lutheran's benefit. So what was happening is somebody goes into the emergency room and gets treated. And they either go home within a day or they don't. And the question is, how does the hospital bill that case? And what CHS was doing was ordering its staff to bill all those cases as admissions because they got paid more than if it had been an observation. But they all occur, or the great majority of them would occur in the emergency room. So Judge Aspin said, well, Ms. Ruelle, you never used the word emergency room in your pleading. And the title of the settlement agreement on this portion of the case said medically unnecessary emergency department admissions. So Judge Aspin said, well, you never used the word emergency department, so therefore you fail under 9B. And our argument is that clearly Ms. Ruelle was first to file for medically unnecessary emergency department admissions because the government found so. So the fact that, and remember, Judge Aspin took the third filer's claim and said he was first and then went back to the first filer. Instead what he should have done was taken the first filer, Ms. Ruelle, and said, did you make a claim for these medically unnecessary emergency department admissions? And the government did that. But then assuming that we're looking at that, then doesn't it seem contraintuitive for you to then say your second client was also first to file? Interesting question, Your Honor. And the reason for that is that if you look at the jurisprudence in this district in Poteet, Poteet says that a different defendant for the same scheme doesn't bar the use of the first to file. So yes, if you just sue different defendants for the same scheme, that doesn't count. However, if you look at the finding of Poteet, they cited a case called Hampton. And in Hampton, the court found that the first filer defeated the other filers because the first filer had filed against the corporate parent. And all of the jurisprudence that I could find, I've cited it in the papers, say that once a relator files against the corporate parent, all the subsidiaries are included. That's not the case if it's the reverse. So, Ms. Ruell. Do we have any case where it is the reverse? Where the first one that's filed is against a subsidiary and then the second one is against a parent? No. I couldn't find one. I'm confused about the timing that you want. I believe that you have used eight minutes of the time. Is that right? I don't know if we started at 10 or 15. I wasn't looking. 10. We started at 10. So, were you reserving time for a rebuttal? Yes, ma'am. Yes, I did, Your Honor. So, is that out of the 10? No. It's no. Oh. Yes. Now, Mr. Garrison had 10 minutes for direct argument. I had 10. Then he has five for rebuttal. And I have five for rebuttal. I'll let the clerk tell us how much time is left. I'm sorry. Okay. That's how we have it. Great. 10 minutes apiece and five minutes each for rebuttal. Okay. Okay. So, obviously, the argument is that Ms. Cook-Reska was first to file against the corporate parent. Ms. Rorell did not sue the corporate parent. And so, everything after Ms. Cook-Reska is defeated under the first to file rule. Let me also make a point, Your Honor. When we found that other relators had filed when the government provided us this information, we ended up working out a settlement agreement ahead of time, a sharing agreement between the relators. And so, that's how all the relators got paid. Ms. Cook-Reska and Ms. Rorell agreed to be represented by the same two firms, my firm and actually the firm for the third relator, Dr. Plants, who've already been paid their fees by CHS. So, the fees that are at issue in this case, and I think I explained it more in rebuttal since I don't have that much time, those fees were done on behalf of both Ms. Rorell and Ms. Cook-Reska. So, if you found that Ms. Rorell was first to file and knocked out every relator after that, the fees would still be applicable. Thank you, Your Honor. I'll reserve my time. May it please the Court, Michael Waldman for appellees. The relators here are not entitled to their attorney's fees for two, and in the case of the DiGrange relators, three separate and independent reasons. First, these relators are not entitled to attorney's fees because they did not receive the relator's share from the settlement that CHS entered into with the government. Second, these relators were not the first to file the National Emergency Department admissions claims, and therefore, relators fail under the False Claims Act's first to file requirement. And in the case of the DiGrange relators, their key TAM case was brought after Tenant Health Care had filed an action in federal court publicly accusing CHS of Emergency Department admissions fraud. Therefore, the DiGrange relators are not entitled to attorney's fees under the False Claims Act public disclosure bar. Turning first to the relator's share requirement, contrary to relator's assertions, receiving the relator's share is a necessary precondition for an award of attorney's fees under the False Claims Act. The requirement that only a relator who receives the relator's share can be awarded attorney's and in its specific language. The part of the False Claims Act that provides for attorney's fees is embedded in the same paragraph as the provision for the relator's share. Both are found together in 3730D with the sentences providing for the relator's share immediately preceding the sentences that discuss the award of the attorney's fees. Well, why didn't all of these relators receive part of the relator's share? There was a settlement with the government, right? And the relators had agreed as to how they were going to divide up the settlement. And they all got part of it, is my understanding. So why aren't they all part of the relator's share then? Your Honor, the United States awarded the relator's share to Dr. Plants. These relators make it seem like that was some sort of administrative convenience that they all received the relator's share. Your Honor, the United States awarded the relator's share to Dr. Plants, and they have a private agreement amongst themselves to divvy up that relator's share. But it is not the case, Your Honor, that the United States awarded the relator's share to any of these relators. And you can see that, Your Honor, if you look at the agreement with Dr. Plants, where they agree to the United States, the Justice Department enters into agreement, to pay $16 million to Dr. Plants. And, Your Honor, that's found at the Dagramji record entry 115-15, beginning at page ID number 2759. In Dr. Plants' agreement with the Justice Department, paying the $16 million relator's share, there's not a whisper of any discussion of any other relators. There's not any discussion about awarding it to any other relators. In the agreement between Dr. Plants and the government, paying the $16 million, there's a release also. The government is careful to get a release on the relator's share. And what they do is they say, Dr. Plants, you have to give us a release for all your claims for the relator's share and under the False Claims Act. There is no such document and no such release for any other of the relators here. So how did the cases that the other relators had brought disappear? Your Honor, there was a settlement agreement entered, agreed to by the parties. By which parties? All the relators, all seven of them or whatever? It's principally, it was negotiated with the Justice Department. It's signed between CHS and the United States and all the relators also sign it. And they agree that this is a fair payment, that $97 million is a fair payment. And they then have the case unsealed and they dismiss the case. So it seems counterintuitive to say that the settlement doesn't cover all of the relators and only covers Plant. The settlement, there are two settlements here, Your Honor. There's the settlement agreement with everyone, which preserves everybody's right. What Judge Aspin found below, this court sent this back to say, does the settlement agreement waive, does CHS waive its right to challenge the entitlement to attorney's fees? And Judge Aspin held this hearing, as my colleague said, and ruled CHS had preserved all its rights to challenge attorney's fees. All its statutory, all its rights to say that these relators don't meet the statutory requirement for attorney's fees. So that is the agreement and both sides are allowed to argue, which is what we've been doing and why we're here, about whether the statute, which has various prerequisites, allows them to receive attorney's fees. There is a separate agreement, so I'm talking about a different agreement, the one at 115-15, is a settlement, is an agreement between the Justice Department and only Dr. Plans awarding the relator's share. So it is the case that only Dr. Plans receives the relator's share from the government. And if you also look at the record, at Appendix 26, we, CHS, asked, and this is defendant's appendix, we asked the Justice Department in 2014, who are you going to pay the relator's share to? We're interested because that's the party we're going to pay our attorney's fees to. And they come back to us and they say, for the Laredo-specific claims, we will pay Ms. Kukreska, but as for the national ED claims, we are paying $16 million to Dr. Plans. So it is not the case that they received the relator's share. It is the case that only Dr. Plans for the national ED claim received the relator's share. So under your theory, you would need to pay attorney's fees only vis-a-vis Plans. And in fact, Your Honor, we paid several million dollars to Dr. Plans to resolve his attorney's fees request. But if Plans' attorney was relying on the other attorneys to do a lot of the work, and that was involved in getting the close to $100 million award settlement agreement against your client and the $16 million going directly to Plans, would the work of the other attorneys be able to be compensated under your theory of the case? Your Honor, if there was some, if they became co-counsel somehow for Dr. Plans and they were representing all Dr. Plans' interests, it may be the case. But Your Honor, if they're simply working on a national ED case and all the later relators, as Mr. Garrison's clients, Dr. Gramsci relators, they're the seventh one to file. If they all want to go assist Dr. Plans, we are not entitled, we are not required to pay their attorney's fees. In this case, Your Honor, they did it for a very simple reason. They had an agreement to, they all realized they were not the first to file. They were not all going to receive the relator's share. And that they had, Your Honor, this risk that they would not be paid for their work. So they entered into a private agreement and that allowed them to share in the proceeds and they've all made millions out of that private agreement. That's fine. But that doesn't mean that they have satisfied the statutory prerequisites to receive either a relator's share or the attorney's fees. And the government agreed. They only gave the relator's share to Dr. Plans. But it was under the understanding that Plans was participating in a settlement agreement with the other relators, no? Your Honor, there's, they may have been aware of it. They may have thought it was a good idea to get rid of this messy case. But no, Your Honor, there's no indication that they gave it to Dr. Plans because they knew he had this settlement agreement. Again, if you look at the, at 115-15 in the Dr. Gramsci record, that's the agreement the Justice Department entered into. And they only get a release from Dr. Plans. If they thought they were resolving the later share as to other relators, they would have said that in the agreement and they would have gotten a release in the agreement. And again, if you look at Appendix 26, we ask them who's getting it and they say it's going to Dr. Plans. They never mention that, and he's going to share it with everyone else. That's just not in the record. They say, oh, they were aware of it, okay, that's fine. But that is, that's very different than meaning that they received the relator's share. And, Your Honor, there are a number of cases, and I would cite you to our brief, NextCare, Allstate, McNeil, all of which say that having a private agreement is not sufficient. As those cases say, the fact that a relator may have shared in the proceeds through a separate private agreement with another relator does not change the fact that a relator did not receive the relator's share under the statute. And these cases that you're citing, are they from other circuits? They're district court cases from around the country, Your Honor. The Allstate case, which is a district court in Massachusetts, says, to hold otherwise would be inconsistent with the clear congressional intent in crafting limiting provisions in 3730. So, among those limiting provisions, they have to receive the relator's share. The statute also has limiting provisions, again, for public disclosure, for the first to file. You can't, these relators cannot, through private agreements, get around those requirements for receiving attorney's fees and for receiving a relator's share. And as that court said, that would incentivize tag-along suits brought by relators seeking a large recovery. Couldn't the settlement agreement that your client signed have provided explicitly for the result that you're arguing for? To say that the only party who will be entitled to an attorney's fee is the plant's person? We could have negotiated that, and these relators wouldn't have agreed to it. We could have also, it could have also, they also could have negotiated with us and said, we are all entitled to our attorney's fees, and we wouldn't have agreed to that. What the parties agreed to was to argue about whether they are statutorily entitled to fees before this court. But your position is they could never win on that. So in a sense, you had a slam-dunk winner there. We thought we had a slam-dunk winner. Obviously, they thought they had a slam-dunk winner the other way. So, you know, we. And really, we are simply arguing at this point about the contents of D, subsection D. We're arguing over whether their entitlement to attorney's fees under subsection D, whether they are statutorily entitled, given the fact that they didn't receive the relator's share, given the fact that they were not the first to file, and given the fact that they. But we haven't gotten to first to file yet. I thought that what you're saying is they're barred completely under D. Yes, Your Honor. They're barred under D, 3730D. But we also believe that they're barred under 3730E, which is the first to file, and under 3730B-5, which is, I'm sorry, 3730B-5 and 3730E is the public disclosure bar. So we say all of those apply to the entitlement to attorney's fees under 3730. And, Your Honor, again, if you look at the relator's share, it says that only such person should be, is entitled. It's in the same, the relator's share and attorney's fees are in the same paragraph. The award of attorney's fees only says for such person. Such person is a person who receives relator's, the relator's share. That's what they've just been discussing, the sentences before, and it's a common sense reading, and it's consistent with the last antecedent interpretive principle that such person being awarded attorney's fees is the person who received the relator's share. And if there were any doubt, Your Honor, the statutory text use of the word also removes that doubt. 3730D says any such person shall also receive attorney's fees. The meaning of the word also is abundantly clear. Only a person who receives a relator's share can also receive attorney's fees. Well, but really the crux of it is the first sentence of D. Whether these people are receiving proceeds of a settlement of the claim. Well, it then goes on to say such, any such person should, and what we're saying is that such person refers to the person described in the two or three sentences before that, which is the person who receives the relator's share. Well, they don't use the word relator's share. They say they use the word in the statute D, receive the proceeds of the action or settlement of the claim. Which is the relator's share. The shorthand. The shorthand, I'm sorry, Your Honor. Yes. And Your Honor, you made the point exactly right, that even under their interpretation, even if they were right about that, it refers to a person who brings a claim that such person refers to a person who brings a relator's claim, 3730B. Your Honor made the point that 3730B includes the first to file requirement. So to the extent that they're saying that's the person who is such person, a person under 3730B, they don't get to pick and choose which aspects of 3730B. Right. So hypothetically, suppose there was a settlement where there were two relators who each shared in the proceeds. So we get out of the idea that they have a relator's share problem the way you're saying there is a problem here. Would, in your view, a settlement agreement that was not explicit, would allow only one of the two who are receiving proceeds to qualify for attorney's fees because only one could be first to file? Your Honor, I think that's right, but there should be no relator's share going to two different relators because there is a first to file requirement that applies to them also. But the hypo is that we have a settlement and people can settle things even if there isn't a legitimate statutory claim because you want to get rid of the cases. So in my hypo, I'm confused why we should be importing the first to file limit on attorney's fees if, hypothetically, the defendant has settled with two people who are, and one can only, only one can be the first to file. Your Honor, the reason to import the first to file is it is a statutory requirement that Congress has established. Why did Congress establish that statutory requirement? But it's not explicit that it refers to this context in the statute, is it? I'm sorry, Your Honor, I couldn't hear you. Well, the statute is not explicit about the applicability of that provision within this context, is it? It is not, Your Honor. There are separate provisions. So that leads to an interpretation question for us, right? Well, yes, Your Honor, it does, but they are... Same is true of your argument with respect to the public disclosure provision, right? Yes, Your Honor, although, again, as, well, yes, Your Honor, these are all questions of interpretation.  And your interpretation is not drawn from any statutory language, correct? It's not. We would argue, Your Honor, that the relator share argument comes right out of the statutory language, the such person and the shall also. I was referring to the first to file and the public disclosure argument. And those are not clearly in 3730D. However, they are provisions that Congress has established for who is a valid relator. And this court, in other circumstances, has said that we need to look before we award a relator share or before we award an attorney's fees, we have to look to see who is a valid relator. So in United States Taxpayers Against Fraud versus General Electric in 1994 case, this court said in the attorney's fees context, Your Honor, said in the attorney's fees context, this court remanded the case back after a settlement to say the district court should look to see whether there's been a public disclosure. So it was saying that settlement doesn't make a difference. In order to get an attorney's fees, you need to be a valid relator and satisfy the public disclosure bar. In the Bledsoe cases, which Judge Clay was the author of, and the second one in particular, this court was dealing with a relator share after a settlement. And what Your Honor said, remanded it back to the district court to look to see whether Rule 9B had been satisfied, whether these relators could satisfy the requirements of pleading the fraud with particularity. There are numerous other cases cited in our brief, Your Honor, which for the relator share and for attorney's fees, other courts have said, we need to see whether these are valid relators before we award them a relator share or attorney's fees. And so we need to see whether they meet the statutory requirements. Doesn't this seem like a crazy system to have the settlement with the government for the close to $100 million a long time ago, and to be spending, your opponent said, since 2014, litigating on attorney's fees? Is that the way this statutory system is designed to operate? Your Honor, a couple things about that. It's a strange statutory system. So let me say that to start out with. Justice Alito has pointed out it has it, and this court has pointed out it has its quirks. Much of the, you know, they complain about seven years of litigation. Much of it, the trip up here and much of the hearing below, was all about their complaints and their arguments about the settlement agreement, which they were wrong about, and which Judge Aspin found against them and said, we had preserved it. So, Your Honor. But if you say it's based on what Judge Aspin found out, we get to review that, don't we? Your Honor, it's not been challenged on appeal that we preserved our rights to challenge the settlement, the entitlement to attorney's fees in the settlement. That issue is just not before this court. It has not been preserved by relators. So he found after, again, after years of litigation, that we had preserved our right to challenge the entitlement to attorney's fees. Your Honor, I also just want to point out about, in responding to your question about isn't this a crazy system, what the policy implications of the system they're asking for. They would say, Your Honor, that we can only challenge attorney's fees, their entitlement to attorney's fees, prior to settlement. So, Your Honor, what they would be asking the court to do is to tell litigants, you can't enter into these settlements with the government until you've resolved all these attorney's fees. So the government would be waiting, would still be waiting for their 98 million dollars. And that's the substance of the case, is the fraud that the government is investigating and resolves with the defendant. And the rule that they're arguing for is that has to be resolved prior to settlement. And that will delay these settlements for years and years and prevent the government from receiving its monies for years and years. So I don't think, it is an unfortunate result that we've been here arguing over this for a long time. Again, it was, as Your Honor, as I explained to Your Honor, because both sides have had different views about what, who is entitled to attorney's fees. And our view was, we shouldn't have to pay attorney's fees to the seventh relator, the one who came in years later. Yeah, but their theory, as I understand it, is that all of these attorneys on their side were working to assist the government in obtaining the 98 million dollar settlement. Your Honor, that may be the case. Two points about that. One, they didn't allege, what Judge Aspin found is, these relators didn't allege it. They never alleged a national AD claim. They only learned about it from Dr. Plants and from others, and they joined the national investigation. But it's nowhere in their original complaint, and they can't simply glom onto the investigation and expect to get fees. Again, this is a, the statute is set up in a way to encourage certain conduct. It's encouraged to incentivize relators to come forward as soon as possible and create a race to the courthouse. That's what the Congress wanted here. And that frequently, Your Honor, results in relators who put a lot of time into a case and help the government ultimately getting dismissed out of the case because they turned out it wasn't, they weren't the first to file. Same relators who do a lot of work building a case, and it turns out that somebody publicly discloses it before they were able to file their complaint. Frequently, they work with the government for a long time. They don't recover because of the public disclosure bar. That's the way it's, Congress established this. In your interpretation, could the government have agreed to pay a relator's share explicitly to all seven private parties? And then could they, assuming that hypothetical, then their attorneys could have qualified for attorney's fees under D. Is that correct? I think we would argue that that was contrary to the first to file principles and that the government should not be permitted to do that. To do, to do this, but I'm hypothetically stating that the government and you agreed to that settlement to pay each of the seven relators. I think that would be a very different situation, Your Honor. So if that situation occurred, then each of those seven relators would be entitled to an attorney's fees, correct? I think so, Your Honor. I'd want to think about that one a little bit more. But again, in this case, we did not agree in the settlement agreement to pay the relator's share to anyone. But you agreed to pay the government 98 million. Correct. And in exchange to have all seven cases dismissed. Correct, Your Honor.  And it's silent as to attorney's fees other than to say, or Judge Aspin has found that we preserved our rights to challenge the entitlement to attorney's fees. Your Honor, there's also a public disclosure bar issue here. We're happy to rely on our papers for that. Let me just review my notes for one second, Your Honor. As to Ms. Kukreska, I would just note that in this case, again, she never alleged a nationwide fraud. She never alleged anything about the emergency department. She has one mention of the emergency department in what could not be a more passing offhand comment relating to billing after discharge. Now, she says, Mr. O'Connell has said today, well, she was talking about getting admitted to the hospital, and so it had to be through the emergency department. That's simply not true, Your Honor. Patients are admitted all the time who come in for procedures, who come in to have a surgery, and they have to stay into the hospital, and sometimes there are allegations that they were improperly admitted. Dr. Plants, by contrast, is the first relator here to allege a national emergency department admission scheme. Dr. Plants has been paid several million dollars. Ms. Kukreska alleged claims at Laredo. She's already been paid for those claims at Laredo in the Texas proceedings. She received more than $729,000. The court reviewed that below. Judge Aspin reviewed it below and found that those payments were for all her Laredo-specific allegations, including those relating to the emergency department. The only work she did after March 9, 2011, was for the national ED claim, and she never alleged a national ED claim. Therefore, she's not entitled to attorney's fees for that. I see my time is up. Thank you, Your Honor. Thank you. Your Honor, I reserve five minutes of my time. I think what should not be lost in this appeal is that the False Claims Act is designed to benefit the government. Why does that matter here? Well, the government coordinated all of the work at issue by attorneys, their staff, and the expenses incurred. And the government encouraged the relator's settlement, encouraged the settlement to be involving all parties. That's in the record. It's also in the record, despite what Mr. Waldman says, that all relators received the relator's share. That's in the appellate record. It's 6253 to 6254. Judge Aspen found that. This is not designed to benefit a defendant that defrauded the government by what was agreed to as $100 million. It's designed to benefit the government and allow the government, as Judge Stranch pointed out in her concurrence, to elicit work from relator's counsel and marshal those resources to that result that benefits the government. But your opponent's point is that the settlement specifically named plants and not the others and that the others had a separate side agreement. No? That's not accurate. I'd encourage you to look at the settlement agreement. It's signed by every relator. It's signed by the defendants. It's signed by the government. It's just not the case. I would also beg the question, what was, not to get back into the contract, but of course CHS made a payment that resulted in the relators being paid something. What would the consideration be? There was consideration that was paid from CHS to the government, to the relators in all seven cases. That's how the settlement agreement works. It's in the record before your honor. And what, again, this court should appreciate is the government's decision to proceed. Government proceeds or intervenes in FCA cases around 15 to 20 percent. The idea that that's not significant and the government didn't know what it was doing when it did that defies the logic of the statute. I think it's also important to note, and of course the caption of these various cases reflect this, we keep calling this community health system, but it's dozens of defendants. And if you look at who those defendants are, they're hospital entities in small towns throughout much of the eastern half of the United States. And so it's not illogical for the government to conclude that these cases all brought different facts about these various hospitals that make up community health systems to the table and chose to proceed in all these actions as 3730D contemplates. 3730D has language, it doesn't say that, it doesn't incorporate any other bar, it doesn't incorporate any other analysis that's required. It has mandatory language. It also should not be addressed as nearly as complicated as Mr. Waldman would ask the court to find. He called it a strange statute. This provision is a fee-shifting statute. Think about the number of federal fee-shifting provisions that are parts of federal cases. Take the Fair Labor Standards Act. Its purpose is to encourage workers who have been paid improperly to have access to the to recover their attorney's fees. If a settlement like this was reached in that case, Mr. Waldman would have this court entertained in a fee petition, well, did the employee work more than three years ago and was outside of the statute? Maybe the employer isn't even covered by the FLSA. This provision is about rewarding prevailing relators. And there should be no doubt that, and there was no doubt by the government's actions, that these relators prevailed under the purpose of the statute, which is to secure the recovery, the proceeds for the government, and then the government proceeded with each of these actions. And in this case, it wasn't even a situation where the government proceeded with the actions against the will of the defendants. The defendants agreed that the government would proceed with the actions. And the relators agreed to a scenario in which they were all paid. That's what matters under 3730D. The other cases cited by Mr. Waldman about private sharing agreements have to do with relators that were in dispute about who should get a relator's share. Here, the relators worked in concert at the government's instructions and directions to the government as a result of fraud. Thank you, Your Honors. Thank you, Your Honor. With regard to Ms. Kukreska, I want to point out that the government paid her. They paid her for finding that she was first to file for medically unnecessary emergency department admissions at Laredo. They were caused by, and remember the statute not only provides for liability against the entity that filed the false claim, but also an entity that causes to be filed the false claim. Ms. Kukreska sued the corporate parent and alleged that she caused Laredo Medical Center to file these false claims. So she raised the issue of the corporate involvement. Also, notice that none of the subsidiary hospitals, the 139 of them, signed the settlement agreement. Only the corporate parent did, and only the corporate parent paid the money. So, you know, the question of whether Ms. Kukreska is deserving of first to file treatment is settled by the government. They already did it, okay? Now the only question is, did she bar Dr. Plants from recovering? The government found that she didn't. We disagree with that, but we agreed with the government to settle the case. That's what happens in settlements. So I want to point out that Mr. Wildman says that Ms. Kukreska has already been paid her unlawful billings for admissions, and that is not true. It's absolutely false. She did receive fees for the Laredo claims, correct? No, she did not. She received claims, she did receive claims for fees for actions at Laredo, but not for the medically unnecessary emergency department admission claims. So let me explain that to you because I think it's important. Ms. Kukreska had three causes of action she filed in her case. The first was this question of unlawful billing for admissions when they should have been observations. The second was some kickback allegations, violations of the anti-kickback statute. And the third was, as Mr. Wildman pointed out, sometimes you go into the hospital for surgery. They were billing as inpatient surgery, surgeries that should have been outpatient surgeries. So those two other claims, I'm just going to call them the non-emergency department admissions claims. Ms. Kukreska was the only one to make those allegations of the seven relators, all right? And she got paid specifically for those. In fact, the defendant agreed that she got paid for them. Once I find it. Anyway, it's in the record, Your Honor, that they told Judge Aspin that, here we are, this is their own pleading. Ms. Kukreska received a relator's share of $2,141,184.04 for unrelated claims involving billing and referral practices at Laredo Medical Center and for ED admissions at Laredo. The defendants have not contested that Ms. Kukreska was first to file on these Laredo specific claims, all three claims, and thus entitled to reasonable attorney's fees. So if you may recall from Mr. Garrison's argument, the settlement agreement provided that we're going to have our attorney's fees determined in all seven different district courts. So we filed our complaint in Houston, I mean, our claim for fees in Houston. Even though they had gotten us to agree to this settlement and said, we'll do that in Houston, they then came in and said, we want to sever out the claims for the emergency department admissions claims because we have all these other relators trying to get fees. And Judge Lake in Houston agreed to that over our objection. And he said, since the ED claims related to other hospitals are pending before other courts, the only way that relators' application for attorney's fees, costs, and expenses for claims related to both Laredo Medical Center and the other hospitals should be considered together. And then he ordered that relators' claim for attorney's fees related to allegations that CHS-affiliated hospitals build the government programs for medically unnecessary emergency department admissions is severed from this action and transferred. So now, she was paid. The judge told us we had to split up our time between the non-emergency department admissions and the emergency department admissions claims. We had some overlapping time, and we asked the court to pay that overlapping time that applied to both causes of action in his fee award. And he did do that up to a certain point. But his order, if you review the record, his order says Ms. Cook-Ress' claims for fees for just the emergency department admissions at Laredo are sent to Tennessee. Thank you. Thank you all for your argument. The case will be submitted, and the court will take a brief recess.